UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
                                  :
JAVIER SEVERINO,
                                  :
              Petitioner,              05 Civ. 475 (DAB)(HBP)
                                  :
     -against-                         REPORT AND
                                  :    RECOMMENDATION
WILLIAM PHILLIPS,
                                  :
              Respondent.
                                  :
----------------------------------X

          PITMAN, United States Magistrate Judge:


          TO THE HONORABLE DEBORAH A. BATTS, United States

District Judge,


I.  Introduction


          Petitioner Javier Severino seeks, by his pro se peti-

tion for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, an

Order vacating the sentence and judgment of conviction imposed on

December 19, 2000 after a jury trial, by the Supreme Court of the

State of New York, New York County (Crocker Snyder, J.), for one

count of attempted murder in the second degree and one count of

assault in the first degree, in violation of New York Penal Law

Sections 125.25(1)/110.00 and 120.10(1), respectively.  As a

result of that conviction, petitioner was sentenced to concurrent

indeterminate terms of imprisonment of twelve and a half to

twenty-five years on each count. Petitioner is currently incarcerated pursuant to that judgment.

For the reasons set forth below, I respectfully recommend that the petition be denied in its entirety.

II.  Facts

    A.  Facts Underlying
        Petitioner's Conviction

On April 22, 1998 at approximately 6:00 p.m., Rafael Paredes rode the subway to visit his brother, Nego, who lived on West 140th Street in Manhattan (Tr.[1] 219-20). After finding that Nego was not in his apartment, Paredes stopped at a bodega, where he learned that Nego had had an argument with petitioner, a man whom Paredes had known since the age of ten (Tr. 220-21, 280).

Paredes left the bodega and saw petitioner, petitioner's brother, and a third man get out of a car (Tr. 223). Petitioner approached Paredes, asked him where Nego was, called Nego a "shit eater," and told Paredes he was a "shit like Nego" (Tr. 222-24). Paredes then punched petitioner in the face (Tr. 224-25). As petitioner staggered backward, he drew a handgun and fired two shots at Paredes, hitting him in the left arm and chest (Tr. 225-26). With Paredes on the ground, petitioner fired two more shots at Paredes (Tr. 225, 229). While this was occurring,

---

[1]"Tr." refers to the transcript of petitioner's trial.

petitioner's brother and the third man who had exited the car had also fired between 10 and 15 shots in all directions (Tr. 227, 229-30).  Juan Martinez, who knew Paredes and the Severino brothers, witnessed the entire incident from across the street (Tr. 137-38, 145-46).

After firing the shots, petitioner, his brother, and the third man fled the scene (Tr. 142-45, 230).  When the shoot-ing subsided, Martinez helped Paredes into a taxi, which took them to the hospital (Tr. 162-64).  Doctors determined that Paredes had been shot twice in the left arm and once in the chest (Tr. 163-164, 226).

Detective Sergeant Frank Horvath, who was investigating the shooting, arrived at the hospital at approximately 8:30 p.m. that night (Tr. 72, 83-84).  Paredes told Horvath that petitioner had shot him (Tr. 241).  Later that night, after speaking with other detectives investigating the shooting, Horvath filled out a "wanted" card, which contained petitioner's name, height, weight, date of birth, address, and identifying characteristics, and filed the card with the police (Tr. 90-91, 122-23).

On May 11, 1998, Horvath drove Paredes to the 115th Precinct in Queens to view a line-up (Tr. 93-95, 243).  Paredes identified petitioner as the man who shot him (Tr. 95-98, 243).

B.  <u>Petitioner's Trial</u>

On November 9, 2000, petitioner's trial commenced before the Honorable Leslie Crocker Snyder, Justice of the Supreme Court of the State of New York, and a jury.  The prosecution called seven witnesses:  Marie Paredes who was Paredes's girlfriend, Detective John Golden who had assisted in conducting the lineup on May 11, 1998, Police Officer Kirsix Delacruz who had translated for Detective Horvath when he interviewed Paredes in the hospital on April 22, 1998, Detective Horvath, Martinez, Paredes, and Dr. James Gill who had reviewed Paredes's hospital file and testified about the extent and severity of his injuries. The defense did not present any evidence.

On November 15, 2000, the jury convicted petitioner of one count of attempted murder in the second degree and one count of assault in the first degree (Tr. 522-23).

On December 19, 2000, a sentencing hearing was held. At the conclusion of the hearing, Justice Snyder sentenced petitioner to concurrent indeterminate terms of imprisonment of twelve and a half to twenty-five years on each count (S.[2] 9).

---

[2]"S." refers to the transcript of petitioner's sentencing hearing.

C.  Post-Conviction Proceedings

In December 2002, petitioner, through counsel, filed
his direct appeal.  Petitioner argued that:  (1) the Trial
Judge's admission into evidence of Horvath's testimony that he
had spoken to other detectives about the shooting before filling
out the "wanted" card constituted improper "bolstering" evidence
under New York law and violated his right to confront the wit-
nesses against him and his right to a fair trial and (2) the
Trial Judge's reference to his nationality and the sentence
imposed for a prior conviction violated the Due Process and
Double Jeopardy Clauses of the federal and New York state Consti-
tutions (Brief for Defendant-Appellant, dated Dec. 2002 ("Pet.
App. Div. Br.") at 18, 29, annexed as Exhibit A to Answer &
Appendix Opposing Petition, dated May 27, 2005 ("Resp. Ans.")).

On October 9, 2003, the Appellate Division unanimously
affirmed petitioner's conviction.  People v. Severino, 309 A.D.2d
571, 765 N.Y.S.2d 502 (1st Dep't 2003).  With respect to the
bolstering claim, the Appellate Division held that the "court
properly admitted a detective's testimony concerning his investi-
gative steps, including preparation of a wanted card, since this
testimony provided a narrative of events leading to defendant's
arrest . . . and did not imply that a nontestifying witness had
implicated defendant." People v. Severino, supra, 309 A.D.2d at
571, 765 N.Y.S.2d at 502.  The Appellate Division also held that

petitioner's "Confrontation Clause claim [was] unpreserved and unavailing[.]" People v. Severino, supra, 309 A.D.2d at 571-72, 765 N.Y.S.2d at 503. Lastly, the Appellate Division held that "[d]efendant's remaining contentions, including those relating to the criteria employed by the court in imposing sentence . . . [were] unpreserved[.]" People v. Severino, supra, 309 A.D.2d at 572, 765 N.Y.S.2d at 503.

On October 15, 2003, petitioner sought leave to appeal to the New York Court of Appeals (Petitioner's Leave Letter, dated Oct. 15, 2003 ("Pet. Leave Ltr."), annexed as Exhibit D to Resp. Ans.). On December 1, 2003, the New York Court of Appeals denied petitioner's leave application. People v. Severino, 1 N.Y.3d 580, 807 N.E.2d 909, 775 N.Y.S.2d 796 (2003).

D. Petitioner's Claims

In his pro se petition, petitioner raises four claims: (1) the Trial Judge violated petitioner's Sixth Amendment confrontation rights by improperly admitting Horvath's testimony that implied that uncalled witnesses identified petitioner as the man who shot Paredes; (2) the Trial Judge violated petitioner's Due Process and Double Jeopardy rights by impermissibly referencing petitioner's nationality and a sentence he received on a prior conviction during sentencing; (3) the Trial Judge improperly admitted testimony by Horvath that inferentially "bolstered"

6

Paredes's identification of petitioner in violation of <u>People v.</u> <u>Trowbridge</u>, 305 N.Y. 471, 113 N.E.2d 841 (1953) and his due process right to a fair trial and (4) that his sentence is a penalty beyond the prescribed statutory maximum and was based on factors not submitted to the jury in violation of <u>Apprendi v. New</u> <u>Jersey</u>, 530 U.S. 466 (2000) and <u>Blakely v. Washington</u>, 542 U.S. 296 (2004) (Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, dated Nov. 21, 2004 ("Habeas Pet.") at ¶ 13). I address each of petitioner's claims in turn.

III.  <u>Analysis</u>

  A.  <u>Confrontation Clause Claim</u>

    Petitioner claims that his Sixth Amendment right to confront the witnesses against him was violated when the Trial Judge admitted Horvath's testimony that, during his investigation of the shooting, he spoke to other detectives and then filed a "wanted" card concerning petitioner (Habeas Pet. at ¶ 13; Pet. App. Div. Br. at 18-21; Petitioner's Traverse, dated July 21, 2005 ("Pet. Trv.") at ¶ 10). Petitioner contends that Horvath's testimony "implied" that other witnesses, not called at trial, had named petitioner as the shooter (Pet. App. Div. Br. at 21). Specifically, Horvath testified on direct examination as follows:

> Q.  You mentioned before that other detectives were also assisting in the investigation.

A. Yes, they were.

Q. Do you know if other detectives spoke to other people regarding what had happened that night?

A. I had found out later that there were some other witnesses, other detectives that I worked with had spoken to.

Q. Later that night, after conducting the investiga- tion that evening, were you looking for anyone in particular with regards to the shooting that you were investigating?

[Defense Counsel]: Objection.

THE COURT: No, I will allow it. Just yes or no. Were you looking for someone in particu- lar?

A. I'm sorry. Could you just say the question again?

Q. That night, after going to the hospital, hearing about what other detectives had done, were you looking for anyone in particular with regard to the shooting that you were investigating?

A. Yes.

[Defense Counsel]: Objection, your Honor.

THE COURT: Overruled.

Q. Who was that person?

[Defense Counsel]: Objection.

THE COURT: Overruled.

A. Javier Severino.

Q. What did you do [] that evening in regard to find- ing him?

A. Yes. I filed a wanted card.

Q. What is that?

A.    A wanted card -- we call it a wanted card.  The
              NYPD calls it also a wanted card.  It's called an
              investigation card.  When we are looking for some-
              one we will [fill] out this card.  It's a small
              index sized card.  We fill out pedigree informa-
              tion, which is name, vital statistics, height,
              weight, Social Security number, date of birth,
              address.

        Q.    Identifying characteristics?

        A.    Everything about him, everything that I could find
              about him.

        Q.    And what did you do with that card?

        A.    That's filed with the police department in New
              York City here, and if he's ever --

              [Defense counsel]:  Objection.

              THE COURT:  Yes, sustained.

(Tr. 89-91).  At a side bar immediately after this testimony, the

following exchange occurred:

        [Defense counsel]:  May I just make a point with
        respect to the objection that I made about the wanted
        card and the conversation?

        I believe it did violate the Trowbridge rules about
        bolstering because it indirectly referred to identifi-
        cations that have been made.  That's the whole point of
        the wanted card.

        THE COURT:  No.  The whole point was to
        show he learned something from his investigation which
        caused him to seek the particular person.  He has a
        right to bring that out.  That is not at all obvious
        that -- nor is it clear that that was just from identi-
        fication.  He spoke to other people.  This is his
        investigation.  So, anyway, your [objection] is over-
        ruled.

(Tr. 92-93).

                                9

Respondent argues that petitioner's Confrontation Clause claim is procedurally barred from habeas review because petitioner did not specifically object on constitutional grounds as required by New York's contemporaneous objection rule (Memorandum of Law in Support of Answer Opposing Petition for a Write of Habeas Corpus, dated May 27, 2005 ("Resp. Mem.") at 7-9).

A habeas petitioner's constitutional claim can be procedurally barred where it is not asserted in state court proceedings in accordance with state procedural requirements and the state courts rely on that violation of state procedural requirements to reject the claim. As the Court of Appeals for the Second Circuit has explained:

> The independent and adequate state ground doctrine first arose in the context of direct appeals to the Supreme Court from final judgments of the state courts. Under that doctrine the Supreme Court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." <u>Coleman v. Thompson</u>, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Moreover, "[t]his rule applies whether the state law ground is substantive or procedural." <u>Id</u>.
>
> \*   \*   \*
>
> The doctrine also applies in the context of federal courts reviewing applications for a writ of habeas corpus . . . . [I]nvoking principles of comity and federalism . . . federal habeas courts faced with an independent and adequate state ground of decision defer in the same manner as does the Supreme Court on direct review.

<u>Garcia v. Lewis</u>, 188 F.3d 71, 76-77 (2d Cir. 1999).  <u>See also</u>

<u>Clark v. Perez</u>, 510 F.3d 382, 390 (2d Cir. 2008); <u>Brown v. State</u>

<u>of New York</u>, 04-CV-1087 (NG)(VVP), 2006 WL 3085704 at *2

(E.D.N.Y. Oct. 30, 2006)("When a habeas corpus petitioner

defaults a federal claim in state court . . . by failing to

preserve the claim for state appellate review . . . , the

independent and adequate state ground doctrine bars federal

habeas corpus review.").

Under New York's contemporaneous objection rule, an

issue is properly preserved for appellate review only if the

party raised an objection at trial.  N.Y. C.P.L. § 470.05(2).[3]

Even if there is an objection to the admission of testimony at

trial, to preserve a constitutional claim grounded on the

Confrontation Clause, New York courts demand that counsel specify

the constitutional dimension of the objection.  <u>E.g.</u>, <u>People v.</u>

<u>Qualls</u>, 55 N.Y.2d 733, 734, 431 N.E.2d 634, 635, 447 N.Y.S.2d

149, 150 (1981)("The defendant's objection at trial was solely on

the ground that the evidence constituted improper bolstering.

---

[3]Section 470.05(2) provides, in pertinent part:

> For purposes of appeal, a question of law with respect
> to a ruling or instruction of a criminal court during a
> trial or proceeding is presented when a protest thereto
> was registered, by the party claiming error, at the
> time of such ruling or instruction or at any subsequent
> time when the court had an opportunity of effectively
> changing the same.

N.Y. C.P.L. § 470.05(2).

That was insufficient to preserve for our review the contentions now advanced that the evidence constituted inadmissible hearsay and that its introduction violated the defendant's constitutional right of confrontation.").

Here, petitioner's Confrontation Clause claim was not properly preserved.  Petitioner did not object to the Trial Judge's admission of Horvath's testimony concerning the "wanted" card on constitutional grounds and, thus, failed to preserve his Confrontation Clause claim for appellate review.  Indeed, petitioner objected only on the ground that Horvath's testimony "violate[d] the Trowbridge rules about bolstering" (Tr. 92).  Thus, on direct appeal, the Appellate Division held that petitioner's "Confrontation Clause claim [was] unpreserved[.]" People v. Severino, supra, 309 A.D.2d at 572, 765 N.Y.S.2d at 503.

Dismissal of a claim on the ground that consideration of the merits is precluded by an adequate and independent state procedural ground is appropriate where the last reasoned state court decision expressly relies on a state procedural bar:

> In Harris [v. Reed], 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)], the Court held that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar."  Harris, 489 U.S. at 263, 109 S.Ct. 1038 (internal quotation marks omitted).  We apply the Long/Harris presumption to the last "reasoned state

judgment" . . . .  See Ylst v. Nunnemaker, 501 U.S.
                    797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

Jones v. Stinson, 229 F.3d 112, 118 (2d Cir. 2000).  See also

Galarza v. Keane, 252 F.3d 630, 637 (2d Cir. 2001)("We have

repeatedly stated that in order for federal habeas review to be

procedurally barred, a state court must actually have relied on a

procedural bar as an independent basis for its disposition of the

case, and the state court's reliance on state law must be

unambiguous and clear from the face of the opinion.").

          Since the New York Court of Appeals denied petitioner

leave without comment, People v. Severino, supra, 1 N.Y.3d at

580, 807 N.E.2d at 909, 775 N.Y.S.2d at 796, the Appellate

Division was the "last state court rendering a judgment" on this

claim.  Harris v. Reed, 489 U.S. 255, 262 (1989); see Ylst v.

Nunnemaker, 501 U.S. 797, 803 (1991)("Where there has been one

reasoned state judgment rejecting a federal claim, later

unexplained orders upholding that judgment or rejecting the same

claim [are presumed to] rest upon the same ground.").  It is

apparent from the face of its decision that the Appellate

Division based its rejection of the Confrontation Clause claim on

an independent state law ground by holding that "[d]efendant's

Confrontation Clause claim [was] unpreserved[.]"  People v.

Severino, supra, 309 A.D.2d at 571-72, 765 N.Y.S.2d at 503.  This

language clearly invoked New York's contemporaneous objection

rule as the reason for petitioner's procedural default.  The fact

                                13

that the Appellate Division held in the alternative that the claim was "unavailing" is of no moment. Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996); Brown v. Miller, 04 Civ. 9804 (LBS), 2005 WL 1773683 at *2 n.3 (S.D.N.Y. July 26, 2005)("The procedural default doctrine applies even where . . . the Appellate Division issues an alternative holding addressing the procedurally defaulted claim on the merits."), citing Harris v. Reed, supra, 489 U.S. at 264.

In addition, New York's contemporaneous objection rule is "adequate" to support the judgement. A state procedural rule is adequate for purposes of the procedural bar doctrine if it is "'firmly established and regularly followed' by the state in question." Garcia v. Lewis, supra, 188 F.3d at 77, quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991). New York courts routinely apply the contemporaneous objection rule in denying review of Confrontation Clause claims where a specific objection based on constitutional grounds was not interposed at trial to preserve the claim. E.g., People v. Kello, 96 N.Y.2d 740, 743-44, 746 N.E.2d 166, 168, N.Y.S.2d 111, 113 (2001)(Confrontation Clause claim not properly preserved for appellate review where defendant objected to admission of evidence at trial solely on the basis that admission of such evidence violated state common-law hearsay rule); People v. Lopez, 25 A.D.3d 385, 386, 808 N.Y.S.2d 648, 649 (1st Dep't 2006)("While defendant objected to

14

this evidence as hearsay, that objection did not preserve a Confrontation Clause claim[.]"); People v. Alvarado, 294 A.D.2d 155, 156, 744 N.Y.S.2d 662, 663 (1st Dep't 2002)("Since defendant's sole objection to these statements was that they violated a rule of evidence, his Confrontation Clause argument is unpreserved[.]"); see also Garcia v. Lewis, supra, 188 F.3d at 79 (noting that "we have observed and deferred to New York's consistent application of its contemporaneous objection rules").

Thus, petitioner's Confrontation Clause claim is procedurally barred from habeas review unless he can show "cause for" and "prejudice" from his state procedural default, or that failure to consider his federal claim will result in a "fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). Cause for a state procedural default is established when a petitioner shows that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986).

Here, petitioner does not advance any argument to support a showing of cause for his procedural default of this claim. Because petitioner cannot show cause, I need not address whether he can show prejudice. Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 127 (2d Cir. 1995); Stepney v. Lopes, 760 F.2d 40, 45 (2d Cir. 1985)("Since a petitioner who has procedurally

defaulted in state court must show both cause and prejudice in order to obtain federal habeas review, we need not, in light of our conclusion that there was no showing of cause, reach the question of whether or not [petitioner] showed prejudice.").

Finally, petitioner does not and cannot show that a fundamental miscarriage of justice will result if his claim is not considered. "To establish a 'miscarriage of justice,' a petitioner must demonstrate that he is 'actually innocent.'" Cruz v. Filion, 456 F. Supp.2d 474, 481 (S.D.N.Y. 2006), quoting Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001). To this end, petitioner must offer "new reliable evidence . . . that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995). Petitioner has not offered any new evidence showing his actual innocence.

Accordingly, petitioner's Confrontation Clause claim should be dismissed as procedurally barred.

## B. Sentencing Claim

Petitioner next claims that the Trial Judge's comments during sentencing concerning his nationality and the sentence he received for a prior conviction violated the Due Process and Double Jeopardy Clauses (Habeas Pet. at ¶ 13; Pet. Trv. at ¶¶ 13-15).

At sentencing, the prosecution argued that the Trial Judge should impose the maximum sentence of twelve and a half to twenty-five years on both the attempted murder and assault charges because, among other things, petitioner had previously plead guilty to robbery, bail jumping, and selling narcotics (S. 3-4).  With respect to the facts underlying the robbery, the prosecutor stated that petitioner had robbed a women in her house, tied her up, and fled the house (S. 3).  The prosecutor further stated that petitioner had received the statutory minimum sentence of three to six years for that robbery (S. 3).  Petitioner then addressed the court and proclaimed his innocence, stating that there had been "a lot of discrimination on the part of the DA" for flying Paredes in from the Dominican Republic for trial (S. 7).  Before imposing sentence, the Trial Judge told petitioner:

> All right.  You've had your say.  You're ramblings are that of a person unwilling to accept any responsibility for anything.  You're the criminal, not the victim.  Of course the DA flew him here to testify, that's how things work . . . .
>
> What I think is an outrage here, you have three violent convictions, you committed [one] of the most violent home invasion[s] and some judge in Queens gave you the minimum sentence of three to six which is outrageous in my view, absolutely outrageous.  There's apparently no hope for you.  Someone does something you don't like, you just shoot him.  You're violent, unrehabilitative, your life shows that, you came to this country to do nothing but to commit crimes and that's what you've done.  Therefore, you must be removed from society as long as the law allows.

(S. 8-9).

Respondent argues that petitioner's sentencing claim is barred from habeas review because petitioner failed to object to the Trial Judge's comments during sentencing as required by New York's contemporaneous objection rule (Resp. Mem. at 23-24).

This rule requires a party to object during sentencing to preserve a claim challenging an alleged deficiency in that sentencing. See People v. Ingram, 67 N.Y.2d 897, 899, 492 N.E.2d 1220, 1221, 501 N.Y.S.2d 804, 805 (1986)(claim attacking constitutionality of sentence not properly preserved where "defendant failed to challenge his sentence before the trial court"); see also Figueroa v. Greiner, 02 Civ. 2126 (SHS)(AJP), 2002 WL 31356512 at *10 (S.D.N.Y. Oct. 18, 2002)(noting that, under New York law, "[t]o preserve challenges to a sentence, defense counsel is required to object at the time sentence is imposed."); El v. Artuz, 105 F. Supp.2d 242, 250 (S.D.N.Y. 2000)("New York's contemporaneous objection requirement generally includes sentencing issues[.]")(internal quotation marks omitted).

Here, petitioner's sentencing claim is also procedurally defaulted. The Appellate Division clearly and expressly based its rejection of the sentencing claim on an independent state law ground by holding that petitioner's claim challenging the "criteria employed by the court in imposing

18

sentence (see People v. Harrison, 82 N.Y.2d 693), [was] unpreserved[.]" People v. Severino, supra, 309 A.D.2d at 572, 765 N.Y.S.2d at 503. This language and the citation to Harrison invoked New York's contemporaneous objection rule as the basis for petitioner's procedural default. In Harrison, the New York Court of Appeals rejected a claim attacking the validity of a sentence on the ground that the claim was "not preserved" under New York law. People v. Harrison, 82 N.Y.2d 693, 694, 619 N.E.2d 651, 651, 601 N.Y.S.2d 573, 573 (1993). Lastly, the fact that the Appellate Division held in the alternative that the claim was "unavailing" is immaterial. Glenn v. Bartlett, supra, 98 F.3d at 724; Brown v. Miller, supra, 2005 WL 1773683 at *2 n.3 ("The procedural default doctrine applies even where . . . the Appellate Division issues an alternative holding addressing the procedurally defaulted claim on the merits."), citing Harris v. Reed, supra, 489 U.S. at 264.

Because the New York Court of Appeals denied petitioner leave to appeal without comment, People v. Severino, supra, 1 N.Y.3d at 580, 807 N.E.2d at 909, 775 N.Y.S.2d at 796, the Appellate Division was the "last state court rendering a judgment" on this claim and its decision gives rise to a procedural bar. Harris v. Reed, supra, 489 U.S. at 262; see Ylst v. Nunnemaker, surpa, 501 U.S. at 803.

19

As noted above, New York's contemporaneous objection rule is "adequate" to support the judgment because it is "'firmly established and regularly followed' by the state in question." Garcia v. Lewis, supra, 188 F.3d at 77, quoting Ford v. Georgia, supra, 498 U.S. at 423-24.  New York courts regularly apply this rule to deny review of claims alleging deficiencies in a sentencing proceeding.  E.g., People v. Hurley, 75 N.Y.2d 887, 888, 553 N.E.2d 1017, 1018, 554 N.Y.S.2d 469, 470 (1990)("The sentence claim now advanced is unpreserved for our review."); People v. Ruz, 70 N.Y.2d 942, 943, 519 N.E.2d 614, 614, 524 N.Y.S.2d 668, 668 (1988)(claim challenging constitutionality of sentence unpreserved where defendant failed to "bring[] this issue to the attention of the court at the time of sentence"); People v. Lemon, 62 N.Y.2d 745, 746, 465 N.E.2d 363, 364, 476 N.Y.S.2d 824, 825 (1984)("Defendant's contention that his sentence is illegal may not be reviewed on this appeal because the point has not been properly preserved."); People v. Santos-Mispas, 38 A.D.3d 923, 923, 831 N.Y.S.2d 344, 344 (2d Dep't 2007)("[D]efendant's claim that the court considered improper factors in imposing sentence is also unpreserved for appellate review[.]"), citing N.Y. C.P.L. § 470.05(2); People v. Rosado, 300 A.D.2d 838, 840-41, 752 N.Y.S.2d 139, 141 (3d Dep't 2002)("As defendant failed to object at the time of sentencing, the claim

that the court considered improper factors in imposing the sentence is unpreserved for appellate review.").

Thus, petitioner's sentencing claim is procedurally barred from habeas review unless he can show "cause for" and "prejudice" from his state procedural default, or that failure to consider his federal claim will result in a "fundamental miscarriage of justice." Coleman v. Thompson, supra, 501 U.S. at 750.

Here, petitioner does not advance any argument in support of showing cause for his procedural default of this claim. Because petitioner cannot show cause, I need not address whether he can show prejudice. Levine v. Comm'r of Corr. Servs., surpa, 44 F.3d 121, 127 (2d Cir. 1995); Stepney v. Lopes, supra, 760 F.2d 40, 45 (2d Cir. 1985)("Since a petitioner who has procedurally defaulted in state court must show both cause and prejudice in order to obtain federal habeas review, we need not, in light of our conclusion that there was no showing of cause, reach the question of whether or not [petitioner] showed prejudice.").

Finally, petitioner does not argue that a failure to consider his sentencing claim would result in a fundamental miscarriage of justice and, therefore, this exception cannot excuse petitioner's procedural default of this claim.

Accordingly, petitioner's sentencing claim should be dismissed as procedurally barred.

C.  Bolstering Claim

Petitioner also claims that the Trial Judge's admission of detective Horvath's testimony concerning his investigation of the shooting improperly "bolstered" Paredes's identification testimony in violation of People v. Trowbridge, supra, 305 N.Y. 471, 113 N.E.2d 841 and his due process right to a fair trial (Habeas Pet. at ¶ 13).  Specifically, petitioner argues that Horvath's testimony "inferentially" bolstered Paredes's identification of petitioner because the testimony "implied that other non-testifying witnesses had named [petitioner] as the shooter" (Pet. App. Div. Br. at 18).  Respondent contends that petitioner's bolstering claim is not cognizable on federal habeas review because it is a question of state law (Resp. Mem. at 9-11).

A fundamental aspect of habeas corpus review is that only violations of federal law are cognizable in a federal habeas corpus proceeding; a violation of state law provides no basis for habeas relief.  28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)("[F]ederal habeas corpus relief does not lie for errors of state law.  Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court

determinations on state-law questions." (internal quotations and citations omitted)); <u>Howard v. Walker</u>, 406 F.3d 114, 121 (2d Cir. 2005)(noting that a conviction obtained in violation of state law is not cognizable in federal court). In this case, petitioner's bolstering claim does not assert even a colorable violation of a federal right.

The overwhelming weight of authority in this Circuit holds that the admission of testimony concerning a pre-trial identification that bolsters other identification testimony does not rise to the level of a constitutional violation, even when such testimony is improper under state law. <u>See</u> <u>Mendoza v. McGinnis</u>, 03 Civ. 2598 (DC), 2004 WL 736894 at *8 (S.D.N.Y. Apr. 5, 2004); <u>Carr v. Fischer</u>, 01-CV-6878, 2003 WL 22175888 at *19 (E.D.N.Y. Sept. 9, 2003); <u>Blades v. Miller</u>, 167 F. Supp.2d 628, 633-34 (S.D.N.Y. 2001); <u>Bailey v. New York</u>, 01 Civ. 1179 (MBM)(AJP), 2001 WL 640803 at *8 (S.D.N.Y. June 8, 2001); <u>Huber v. Schriver</u>, 140 F. Supp.2d 265, 279-80 (E.D.N.Y. 2001); <u>Diaz v. Greiner</u>, 110 F. Supp.2d 225, 234 (S.D.N.Y. 2000); <u>Fletcher v. Mann</u>, 956 F. Supp. 168, 173-74 (N.D.N.Y. 1997), <u>aff'd</u> <u>without opinion</u>, 165 F.3d 13 (2d Cir. 1998); <u>Connolly v. Artuz</u>, 93 CV 4470 (FB), 1995 WL 561343 at *7-*8 (E.D.N.Y. Sept. 15, 1995); <u>Styles v. VanZandt</u>, 94 Civ. 1863 (MGC), 1995 WL 326445 at *5 (S.D.N.Y. May 31, 1995), <u>aff'd</u>, 101 F.3d 684 (2d Cir. 1996); ; <u>Styles v. Zandt</u>, 94 Civ. 1863 (MGC), 1995 WL 326445 at *5

(S.D.N.Y. May 31, 1995); <u>Battee v. Williams</u>, 91-CV-0154E(F), 1993
WL 117530 at *3 (W.D.N.Y. April 8, 1993); <u>Ayala v. Hernandez</u>, 712
F. Supp. 1069, 1074 (E.D.N.Y. 1989); <u>Brown v. Hoke</u>, 88 CV 620,
1988 WL 83191 at *2 n.3 (E.D.N.Y. June 30, 1988), <u>aff'd</u>, 872 F.2d
1021 (2d Cir. 1989); <u>Moore v. Scully</u>, 86 Civ. 0252 (CSH), 1987 WL
17429 at *1 (S.D.N.Y. Sept. 14, 1987); <u>Snow v. Reid</u>, 619 F. Supp.
579, 582 (S.D.N.Y. 1985); <u>Orr v. Schaeffer</u>, 460 F. Supp. 964, 967
(S.D.N.Y. 1978).

      Moreover, petitioner cannot show that the admission of
Horvath's testimony violated his due process right to a fair
trial.  An erroneous evidentiary ruling based on state law may
rise to the level of a due process violation if a petitioner
shows "that the error was so pervasive as to have denied him a
fundamentally fair trial[.]"  <u>Collins v. Scully</u>, 755 F.2d 16, 18
(2d Cir. 1985), <u>citing</u> <u>United States v. Agurs</u>, 427 U.S. 97, 108
(1976).  To elevate his bolstering claim to the level of a due
process violation, petitioner must show "(1) that the
introduction of the contested statement violated a state
evidentiary rule, (2) that such error violated an identifiable
constitutional right, and (3) that he was deprived of a
'fundamentally fair' trial, because the error served as the basis
for conviction or removed a reasonable doubt that would have
otherwise existed."  <u>Varela v. Marshall</u>, 520 F. Supp.2d 471, 477
(2007).

First, the admission of Horvath's testimony did not violate New York law because the testimony did not constitute implied bolstering.  In <u>People v. Holt</u>, 67 N.Y.2d 819, 492 N.E.2d 769, 501 N.Y.S.2d 641 (1986), the New York Court of Appeals "held that it was error for a trial court to permit a police officer to testify that after having spoken to an <u>eyewitness</u>, he (the officer) arrested the defendant.  This sort of testimony was viewed as an implicit bolstering of the same eyewitness' in-court identification testimony, in violation of the rule of [<u>Trowbridge</u>.]"  <u>People v. Polidore</u>, 181 A.D.2d 835, 836, 581 N.Y.S.2d 827, 829 (2d Dep't 1992)(emphasis in original).  Here, unlike in <u>Holt</u>, Horvath did not testify that he actually spoke to any of these "other witnesses" or that any of them had actually made an out-of-court statement identifying petitioner as the shooter.  <u>See</u> <u>People v. Polidore</u>, <u>supra</u>, 181 A.D.2d at 836, 581 N.Y.S.2d at 829 (no inferential bolstering of in-court identification of defendant where police officer testified that he spoke with two civilians before arresting defendant because there was no evidence that these two civilians "actually identified the defendant as the robber"); <u>People v. Poindexter</u>, 138 A.D.2d 418, 419, 526 N.Y.S.2d 7, 8 (2d Dep't 1988)(no inferential bolstering where "[n]owhere in the detective's testimony is there a statement that any of the witnesses identified the defendant as the killer").

In addition, the Trial Judge properly admitted Horvath's testimony for the purpose of providing a narrative of the events leading to petitioner's arrest.  Under New York law, such testimony does not constitute inadmissible hearsay and, thus, does not violate Trowbridge because it is not being offered for the truth of any out-of-court statement.  See People v. Nieves, 294 A.D.2d 152, 152-53, 741 N.Y.S.2d 406, 407 (1st Dep't 2002)(rejecting claim of improper bolstering because "the detective's brief and generalized testimony that he arrested defendant after interviewing certain persons was properly admitted as background to explain to the jury the extent of the investigation and how the police came to focus on defendant"); People v. Foster, 282 A.D.2d 226, 226, 722 N.Y.S.2d 387, 388 (1st Dep't 2001)("The investigating detective's brief and limited testimony that . . . defendant's name came up during the investigation, was admissible as explanatory background information[.]"); People v. Justice, 202 A.D.2d 362, 362, 610 N.Y.S.2d 4, 5 (1st Dep't 1994)("'Hearsay' testimony was properly admitted . . . not for its truth, but to complete the narrative of events leading up to defendant's apprehension[.]").

Second, even assuming, arguendo, that the admission of Horvath's testimony violated New York evidentiary law, it did not violate petitioner's due process right to a fair trial.  See Nieves v. Fischer, 03 Civ. 9803 (DC), 2004 WL 2997860 at *7

(S.D.N.Y. Dec. 28, 2004)("While the practice of bolstering is prohibited in various states, including New York, it is not sufficiently prejudicial to deprive a defendant of his due process rights to a fair trial.")(internal quotation marks omitted); Vega v. Berry, 90 Civ. 7044 (LBS), 1991 WL 73847 at *2 (S.D.N.Y. Apr. 29, 1991)("Although bolstering is a practice prohibited in various states, including New York, the practice is not forbidden by the Federal Rules of Evidence and is not sufficiently prejudicial to deprive a defendant of his due process right to a fair trial.").

Third, because the admission of Horvath's testimony did not constitute a violation of state evidentiary law or constitutional law, I conclude that the admission did not deprive petitioner of a fundamentally fair trial. In assessing whether the admission of allegedly prejudicial evidence amounted to a denial of due process, "a court must view the evidence 'objectively in light of the entire record before the jury[.]'" Osorio v. Conway, 496 F. Supp.2d 285, 299 (S.D.N.Y. 2007), quoting Collins v. Scully, supra, 755 F.2d at 19. Both Paredes and Martinez testified that they saw petitioner shoot Paredes (Tr. 137, 225). Thus, viewed in light of the entire record, Horvath's testimony concerning his investigation and his filing of the "wanted" card neither provided the basis for petitioner's

conviction nor removed a reasonable doubt that would have existed in the record had his testimony been excluded.

Accordingly, petitioner's bolstering claim should be dismissed.

D.  Apprendi Claim

Lastly, petitioner claims that his sentence is a penalty beyond the prescribed statutory maximum based on factors not submitted to the jury in violation of Apprendi v. New Jersey, supra, 530 U.S. 466 and Blakely v. Washington, supra, 542 U.S. 296 (Habeas Pet. at ¶ 13; Pet. Trv. at ¶ 13).  Respondent argues that this claim, while unexhausted, is frivolous and should be dismissed on the merits pursuant to 28 U.S.C. § 2254(b)(2) (Resp. Mem. at 21-27).

A state prisoner seeking to vacate his conviction on the ground that his federal constitutional rights were violated must first exhaust all available state remedies.  28 U.S.C. § 2254(b); Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2386 (2006); Baldwin v. Reese, 541 U.S. 27, 29 (2004); Clark v. Perez, supra, 510 F.3d at 390.  As the Court of Appeals for the Second Circuit has noted:

> If anything is settled in habeas corpus jurisprudence,
> it is that a federal court may not grant the habeas
> petition of a state prisoner "unless it appears that
> the applicant has exhausted the remedies available in
> the courts of the State; or that there is either an

> absence of available State corrective process; or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner."  28 U.S.C. § 2254(b)(1).

Aparicio v. Artuz, supra, 269 F.3d at 89.

Here, petitioner did not fairly present his Apprendi claim to any state court.  In his Appellate Division brief, petitioner did not raise any argument even tangentially suggesting that his sentence was a penalty beyond the prescribed statutory maximum based on factors not submitted to the jury. Nor did petitioner set forth the factual predicate for his Apprendi claim.  Moreover, in his letter to the New York Court of Appeals seeking leave to appeal, petitioner raised only the issues he presented to the Appellate Division (Pet. Leave Ltr. at 1).  On this record, it is clear that petitioner did not fairly present his Apprendi claim to the state courts through any of the methods set forth in Daye.  Thus, this claim is unexhausted.

Although it is unexhausted, this court may still consider petitioner's Apprendi claim on the merits to reject the claim.  28 U.S.C. § 2254(b)(2); Rhines v. Weber, 544 U.S. 269, 277 (2005).  The standard of review applicable to such unexhausted claims, however, is not well settled.

> 28 U.S.C. § 2254(b)(2) permits federal courts to consider the merits of an unexhausted habeas claim. The Second Circuit, however, has not yet discussed the standard of review that district courts should employ when reviewing such a claim.  See Brown v. State of New York, 374 F. Supp.2d 314, 318 (W.D.N.Y. 2005).  The majority of courts in this circuit that have addressed

29

> this issue have utilized a "patently frivolous"
> standard. <u>See</u> <u>Brown</u>, 374 F. Supp.2d at 318 (citing
> <u>Naranjo v. Filion</u>, No. 02-CIV-5449, 2003 WL 1900867, at
> *8 (S.D.N.Y. Apr. 16, 2003)) (collecting cases)
> (footnote omitted). A minority of district courts have
> opined that the dismissal of unexhausted claims is
> appropriate when "'it is perfectly clear that the
> [petitioner] does not raise even a colorable federal
> claim.'" <u>See</u> <u>Hernandez v. Lord</u>, No. 00-CIV-2306, 2000
> WL 1010975, at *4 n. 8 (S.D.N.Y. July 21, 2000)
> (collecting cases); <u>see</u> <u>also</u> <u>Edmonson v. Artus</u>, No. 04-
> CV-5477, 2006 WL 3486769, at *11 (E.D.N.Y. Nov. 30,
> 2006); <u>Russell v. Ricks</u>, No. 02-CV-0940, 2006 WL
> 1555468, at *16 (N.D.N.Y. May 31, 2006) (Kahn, J.).

<u>Shaw v. Superintendent</u>, 9:03-CV-0610 (NPM), 2007 WL 951459 at *10

(N.D.N.Y. Mar. 28, 2007)(footnote omitted); <u>see</u> <u>Sosa v. Mohawk</u>

<u>Corr. Fac.</u>, 07 Civ. 5916 (NRB), 2008 WL 534764 at *6 n.5

(S.D.N.Y. Feb. 25, 2008); <u>Van Gorden v. Superintendent</u>, 9:03-CV-

1350, 2007 WL 844901 at *5 (N.D.N.Y. Mar. 19, 2007); <u>Wheeler v.</u>

<u>Phillips</u>, 05-CV-4399 (JFB), 2006 WL 2357973 at *17 (E.D.N.Y. Aug.

15, 2006)(applying patently frivolous standard to unexhausted

claim). One judge in this District has concluded that

unexhausted claims should be reviewed under a "heightened de novo

standard." <u>King v. Cunningham</u>, 442 F. Supp.2d 171, 179 (S.D.N.Y.

2006).

Like most judges who have considered the matter, I

conclude that the issue of what standard of review should be

applied to unexhausted claims is more theoretical than real

because petitioner's claim fails under any of the three standards

that have been suggested.

Respondent argues that petitioner's Apprendi claim is frivolous because petitioner did not receive a sentence in excess of the "statutory maximum" (Resp. Mem. at 22). In Apprendi, the Supreme Court held that the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment require that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proven beyond a reasonable doubt." Apprendi v. New Jersey, supra, 530 U.S. at 490. The Supreme Court noted that its holding was not meant to disturb the discretion possessed by judges in "imposing a judgment within the range prescribed by statute." Apprendi v. New Jersey, supra, 530 U.S. at 481 (emphasis in original). Thus, for Apprendi purposes, "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." Blakely v. Washington, supra, 542 U.S. at 303-04 (emphasis in original).[4]

---

[4]I note that, were I to analyze petitioner's Apprendi claim under the deferential standard set forth in 28 U.S.C. § 2254(d), the "clearly established Federal law, as determined by the Supreme Court[,]" 28 U.S.C. § 2254(d)(1), would not include Blakely v. Washington, supra, 542 U.S. 296 because it was decided on June 24, 2004, well after the Appellate Division's decision was issued (October 9, 2003) and the time petitioner's state-court conviction became final (February 29, 2004). See Brown v. Greiner, 409 F.3d 523, 534 n.3 (2d Cir. 2005). However, because I reject the merits of the claim under 28 U.S.C. § 2254(b)(2), which, as noted above, at least one judge in this District has held requires a heightened de novo standard of review, I consider
(continued...)

Here, a jury found petitioner guilty beyond a reasonable doubt of attempted murder in the second degree and assault in the first degree. <u>See</u> N.Y. Penal Law §§ 125.25/110.00; 120.10. Under New York law at the time of petitioner's crime, both offenses were designated "Class B violent felony offenses" N.Y. Penal Law § 70.02(1)(a). A separate provision of the New York Penal Law also in effect at that time mandated that class B violent felonies be punished by an indeterminate prison sentence of at least three to six years and no more than from twelve and a half to twenty-five years. N.Y. Penal Law §§ 70.02(3),(4). Petitioner's concurrent indeterminate sentences of twelve and a half to twenty-five years do not implicate <u>Apprendi</u> because they fell within the "statutory maximum" of Section 70.02 of the New York Penal Law then in effect. Thus, petitioner's <u>Apprendi</u> claim fails. <u>See</u> <u>Jones v. Donnelly</u>, 487 F. Supp.2d 403, 417 n.3 (S.D.N.Y. 2007)("[T]he sentence imposed was the statutory maximum but did not exceed it, thus <u>Apprendi</u> is inapplicable."); <u>Jones v. West</u>, 473 F. Supp.2d 390, 426 (W.D.N.Y. 2007)(finding <u>Apprendi</u> was not violated where petitioner received sentence within statutory maximum); <u>Holland v. Donnelly</u>, 216 F. Supp.2d 227, 241 (S.D.N.Y. 2002)(rejecting <u>Apprendi</u> claim asserted by habeas petitioner where "sentence

---

[4](...continued)
<u>Blakely</u>.

imposed . . . [was] expressly authorized as a punishment for the crime found by the jury[.]"), aff'd, 324 F.3d 99 (2d Cir. 2003).

Accordingly, petitioner's Apprendi claim should be dismissed on the merits pursuant to 28 U.S.C. § 2254(b)(2).

## IV. Conclusion

For the foregoing reasons, I respectfully recommend that the petition be denied in its entirety.

In addition, since petitioner has not made a substantial showing of the denial of a constitutional right, I also recommend that a certificate of appealability not be issued. 28 U.S.C. § 2253. To warrant the issuance of certificate of appealability, "petitioner must show that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Middleton v. Attorneys Gen., 396 F.3d 207, 209 (2d Cir. 2005)(per curiam) (internal quotation marks omitted); see also Love v. McCray, 413 F.3d 192, 195 (2d Cir. 2005)(per curiam). For the reasons set forth above, I conclude that there would be no difference of opinion among reasonable jurists that the petition should have been reviewed in a different manner or that petitioner should be encouraged to proceed further.

recommend that a certificate of appealability not be issued. 28
U.S.C. § 2253. To warrant the issuance of certificate of appeal-
ability, "petitioner must show that reasonable jurists could
debate whether . . . the petition should have been resolved in a
different manner or that the issues presented were adequate to
deserve encouragement to proceed further." <u>Middleton v. Attor-
neys Gen.</u>, 396 F.3d 207, 209 (2d Cir. 2005)(<u>per curiam</u>) (internal
quotation marks omitted); <u>see also Love v. McCray</u>, 413 F.3d 192,
195 (2d Cir. 2005)(<u>per curiam</u>). For the reasons set forth above,
I conclude that there would be no difference of opinion among
reasonable jurists that the petition should have been reviewed in
a different manner or that petitioner should be encouraged to
proceed further.

V.   <u>Objections</u>

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(2)
of the Federal Rules of Civil Procedure, the parties shall have
ten (10) days from the date of this Report and Recommendation to
file written objections. <u>See also</u> Fed.R.Civ.P. 6(a) and 6(d).
Such objections (and responses thereto) shall be filed with the
Clerk of the Court, with courtesy copies delivered to the cham-
bers of the Honorable Deborah A. Batts, United States District
Judge, 500 Pearl Street, Room 2510, New York, New York 10007, and
to the chambers of the undersigned, 500 Pearl Street, Room 750,

New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Batts. FAILURE TO OBJECT WITHIN TEN (10) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. Thomas v. Arn, 474 U.S. 140 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:   New York, New York
         May 19, 2008

                                    Respectfully submitted,


                                    HENRY PITMAN
                                    United States Magistrate Judge


Copies mailed to:

Mr. Javier Severino
99-A-3520
Sing Sing Correctional
     Facility
354 Hunter Street
Ossining, New York   10562

Christopher Marinelli, Esq.
New York County District
     Attorney's Office
1 Hogan Place
New York, New York   10013

34